# INDEPENDENT

# RESILIENT FLOOR COVERERS

# AGREEMENT

between

**Dartz And Matz Inc.
99 Grand Street Suite 18
Moonachie NJ 07074**

- and -

# THE DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO

## JULY 01, 2001 - JUNE 30, 2006

## TABLE OF CONTENTS

**Article**                                                               **Page**

I     Jurisdiction.................................
II    Geographical Jurisdiction.....................      1
III   Union Security...............................      3
IV    Hours of Labor...............................      4
V     Holidays.....................................      6
VI    Wage Rates and Fringe Benefits...............      8
VII   Traveling Time and Expense...................      10
VIII  Classification of Industry...................      15
IX    Job Referral.................................      16
X     General Foreman, Foreman, Lead Person.........      18
XI    Fringe Benefit Funds.........................      23
XII   Bonding......................................      24
XIII  Miscellaneous Conditions.....................      34
XIV   Grievance Procedure..........................      37
XV    Greater New York Floor Coverers Industry &        44
      A.J.R.E.I. Promotional Fund...................
XVI   Savings Clause...............................      46
XVII  Expiration Automatic Renewal.................      48
XVIII Effectuating Clause..........................      49
                                                         50

**AGREEMENT** made and entered into this 1st day of July 2001 and effective as of April 14, 2006, between:

# Dartz And Matz Inc.
# 99 Grand Street Suite 18
# Moonachie NJ 07074

### HEREIN REFERRED TO AS
### (THE "EMPLOYER")

**and the**

### DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA
### HEREIN REFERRED TO AS
### (THE "UNION" and/or THE "DISTRICT COUNCIL")

## ARTICLE I
## JURISDICTION

(A)   The Employer recognizes the Union as the sole and exclusive bargaining agent for those employees of the Employer covered by the Agreement doing work within the jurisdiction of of the Union.

(B)   This Agreement shall cover, and grant the persons covered hereunder, work jurisdiction over all resilient floor covering and related materials, whenever applied, including, but not limited to, all work which consists of measuring, cutting, fitting, taking up and laying of new and old carpets, protective covering as necessary

to protect linoleum, cork carpet matting, linen, linoleum and rubber on walls, floors and ceilings, all resilient tile of cork, rubber, linoleum, mastic, asphalt, vinyl, or other composition tiles for floors, walls or ceilings, drilling of holes for sockets and pins, waxing of linoleum, rubber and all other above-mentioned floor, wall or ceiling covering, fitting devices for the attachment of carpet and other floor coverings, the priming of concrete and flash patching, the spreading of all adhesives and the preparation of cracks and expansion joints, laminates, installation of self-leveling floors (as underlayment or as finished floors) and fritz tile. Self leveling floors, seamless floor covering and the handling of all the above-mentioned materials, on jobsites, and any and all materials covered by the United Brotherhood of Carpenters and Joiners of America. Cement down wood flooring shall be deemed to be covered under this Agreement in any geographical area normally considered to be within the jurisdiction of the Union.

(C) This Agreement shall also cover all work which consists of sewing, altering, mending, binding or otherwise making, remodeling or repairing of new or old carpets, including oriental rugs, on commercial and rehabilitation jobs and in warehouses.

(D) The handling and installation, including the operation of any and all machinery and/or equipment in any way related to the handling and installation of all carpeting known as ASTRO-TURF or

2

any similar name or type, whether used indoors or outdoors, is under the jurisdiction of the Union. The spraying of cement and/or adhesives for the purpose of receiving any type of flooring materials wherever or however applied, as well as the operation of any other equipment in any way connected with such installation, shall be deemed to be covered under this Agreement and within the jurisdiction of the Union.

(E) Employees reporting for work outside of the geographical jurisdiction of this Collective Bargaining Agreement, having been directed to do so by an Employer who is bound by the provisions of this Agreement, shall be entitled to all the provisions of this Agreement, regardless of the wage and fringes prevailing in the geographical area in which they are directed to report to work. If the Union has a reciprocal agreement with other Unions outside of its jurisdictional area, then the balance, if any, of wages and fringe benefits shall be paid to the Union and/or the Fund. If no such reciprocal agreement exists, all such wages and fringe benefits shall be paid to the Union and/or Fund.

## ARTICLE II

## GEOGRAPHICAL JURISDICTION

This Agreement shall cover work performed by the Employer when employing Journeymen and all other employees within the scope of

3

this Agreement within the following territorial jurisdiction in the State of New York:

Counties of:

| | |
|---|---|
| Bronx | Queens |
| Kings | Richmond |
| Nassau | Rockland |
| Manhattan | Suffolk |
| Orange | Westchester |
| Putnam | Dutchess |

## ARTICLE III

### UNION SECURITY

(A)  All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the Union. All other employees covered by this Agreement who are employed by Employers engaged primarily in the Building and Construction Industry shall become members of the Union seven (7) days following the beginning of employment by a member of the Employer or the date of this Agreement, whichever is later, and shall retain such membership in good standing during the term of this Agreement as a condition of continued employment by a member of the Employer.

(B)  All employees covered by this Agreement who are employed by Employers not engaged primarily in the building and construction industry shall become members of the Union on the thirtieth (13) day following the beginning of employment, or the date of this Agreement, whichever is later, and shall retain such membership during the term of this Agreement as a condition of continued

4

employment.

(C) The Employer agrees upon notice from the Union to discharge any person covered hereunder who has not become or remained a member in good standing in the Local 2287, provided that such membership was available to the person based on terms and conditions applicable to other members and that membership was not denied or terminated for any reason other than the failure of the individual to tender periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

(D) Each Employer warrants that no enterprise which the Employer or any officer, stockholder, partner or agent of the Employer has substantial de facto interest in now, or achieves during the term of this Agreement, shall engage in any activities covered under this Agreement without being bound to all the terms and conditions of this Agreement. The parties further acknowledge that those who engage in activity in violation of this provision cause great and incalculable damage to the Union and its members. Since the exact damage suffered by the Union due to a violation of this provision is not readily calculable, the parties agree that any Employer, officer, stockholder, partner or agent who violates this Section, as well as the Employer itself, shall pay liquidated damages in the sum of ten thousand ($10,000) dollars or the amount of actual damages the Union can prove, whichever is higher to the

5

Union for each violation of this provision.

## ARTICLE IV

### HOURS OF LABOR

(A)  The intent is to maintain the seven hour work day, thirty five hour work week. During the term of this Agreement the work day may be increased to eight hours at straight time pay hours and a forty hour work week with written notification to the District Council prior to commencement of job and must continue for the duration of the job.  Overtime hours Monday through Friday shall be paid at time and one-half.  Saturday pay shall be at the time and one-half rate.  The Contractor is expected to establish and maintain a reasonable work week schedule allowing for unusual jobsite conditions.  Other than an emergency, notice of all overtime work should be given to the Floor Coverers before noon if possible.  Floor Coverers will never be penalized for refusing to work overtime.

(B)  Flexible Starting Time: The normal work day shall start at eight (8) a.m. and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9) a.m. for all or a portion of the employees.  Notification to the Union will be given by the Employer when changed from the normal eight (8) a.m. starting time.  No Floor Coverer is to start work before

6

the designated starting time.

(C)  All additional hours worked shall be paid at the time and one-half rate.

(D)  Saturday:  All hours worked shall be paid for at the rate of time and one-half.  When a holiday falls on a Saturday, then the rate shall be double time.

(E)  All Floor Coverers will be given five (5) minutes time to wrap up their tools and wash up before lunch and quitting time.

(F)  Shift Work:  The Employer may work two shifts with the first shift working eight (8) a.m. to the end of the shift at straight time rate of pay.  The second shift will receive one hour at double time rate for the last hour of the shift. (eight for seven, nine for eight).  In addition, members of the second shift shall be allowed one-half (½) hour to eat, with this time being included in the hours of work established.  There must be a first shift to work the second shift.  All additional hours worked shall be paid at the time and one-half rate.  The Employer shall notify the Union in advance of the beginning of the shift schedule.  On shift work, the Job Steward shall work no more than the shift hours.  There shall be a Job Steward on each shift who shall be appointed by the Union.  There shall be a pre-job conference with the Union before the commencement of any shift work.

## ARTICLE V

## HOLIDAYS

**(A)** The contractual holidays are:

New Year's Day
President's Day
Memorial Day
Independence Day
Labor Day

Columbus Day
Presidential Election Day
Thanksgiving Day
Day after Thanksgiving
Christmas Day

**(B)** It is further agreed that no work shall be performed on Sundays or Legal Holidays, except in the case of emergency or necessity, and that no work shall be performed then unless permission is granted by the District Council on the previous workday, stating location of building where work is to be performed and the number of workers required. DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAYS, AND LEGAL HOLIDAYS, except as otherwise noted. Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

**(C)** The listed Holidays are to be non-paid holidays except for the General Foreman, Foreman and First and Second Year Apprentices who shall be paid on a weekly basis (inclusive of holidays).

**(D)** In all cases, the Holidays referred to shall be observed on the day and date established by the State of New York. When permission is granted to work on such Legal Holidays, double time shall be paid.

8

(E)  Except as provided herein, General Foreman, Foreman and first and second year apprentices shall be employed according to the established work week as provided herein except when due to the exigencies of the situation, Local 2287 grants permission to the Employer to employ apprentices for a period of time of less than a full week.  This weekly payroll basis will be followed regardless of whether a holiday falls within the week in question, provided that the individual entitled to weekly pay has been ready, willing and able to work during the week in question.

(F) Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working.  Work performed on the afternoons of said days shall be paid at the double-time rate only.  Fringe Benefit Contributions will be payable on the half-holidays referred to above.

(G)  When a Legal Holiday, defined herein this Article, falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked. If a Holiday is to be worked, the Union shall be notified by noon of the previous work day. No work shall be performed on Labor Day.

# ARTICLE VI

## WAGE RATES AND FRINGE BENEFITS

Wage rates and fringe benefit contribution within the bargaining unit shall be determined and/or reallocate by Union at its sole discretion:

### TOTAL WAGES & FRINGE BENEFITS - JOURNEYMAN FLOOR COVERERS

|                          | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|--------------------------|----------|----------|----------|----------|
| Total package per hr.    | $57.48   | $58.89   | $60.58   | $62.27   |

|                          | 07/01/03 | 07/01/04 | 07/01/05 |
|--------------------------|----------|----------|----------|
| Total package per hr.    | $65.09   | $67.91   | $70.87   |

FOREMAN -         $3.00 PER HR. ABOVE JOURNEYMAN SCALE
GENERAL FOREMAN - $6.00 PER HR. ABOVE JOURNEYMAN SCALE

| EFFECTIVE DATES WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|--------------------------|----------|----------|----------|----------|
| Journeyman               | $33.68   | 35.09    | 35.67    | -----    |
| Foreman                  | $36.68   | 38.09    | 38.67    | -----    |
| General Foreman          | $39.68   | 41.09    | 41.67    | -----    |

| EFFECTIVE DATES WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|--------------------------|----------|----------|----------|
| Journeyman               | $----    | -----    | -----    |
| Foreman                  | $----    | -----    | -----    |
| General Foreman          | $----    | -----    | -----    |

**APPRENTICES**

Apprentice wage increases may be deferred for reasons determined by the Joint Apprentice Committee and or it's Training Director by written notice to the Employer.

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| 1st yr. Apprentice 40% | $13.47 | 14.04 | 14.27 | ----- |
| 2nd yr. Apprentice 50% | $16.84 | 17.55 | 17.84 | ----- |
| 3rd yr. Apprentice 65% | $21.89 | 22.81 | 23.19 | ----- |
| 4th yr. Apprentice 80% | $26.94 | 28.07 | 28.54 | ----- |

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| 1st yr. Apprentice 40% | $----- | ----- | ----- |
| 2nd yr. Apprentice 50% | $----- | ----- | ----- |
| 3rd yr. Apprentice 65% | $----- | ----- | ----- |
| 4th yr. Apprentice 80% | $----- | ----- | ----- |

**FRINGE BENEFIT RATE PER HOUR**
**JOURNEYMAN-FOREMAN-GENERAL FOREMAN**

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 5.41 | 5.41 | 5.91 | ----- |
| ANNUITY | $ 4.70 | 4.70 | 5.20 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 4.40 | 4.40 | 4.40 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $23.80 | 23.80 | 24.91 | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

11

**FRINGE BENEFIT RATE PER HOUR**
**1st 2nd 3rd & 4th YEAR APPRENTICES**

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 2.71 | 2.71 | 2.96 | ----- |
| ANNUITY | $ 2.35 | 2.35 | 2.60 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 2.20 | 2.20 | 2.20 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $16.55 | 16.55 | 17.16 | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

The Pension, Vacation and Annuity Fund contribution rates for Apprentices are based upon 50% of the Journeyman rate.

(A)  Any person directed to appear at a job site shall be guaranteed two (2) hours pay by the Employer if the employee appears prepared to work prior to starting time of the workday in question.  Any employee who has worked for an Employer at a job site shall be deemed to have been directed to report to that job site on the following "workday" unless the employee has been actually directed to report to another job site the preceding

"workday" or laid off the preceding "workday".

A Floor Coverer's work day consists of seven (7) hours. If the said employee does not work seven (7) hours because of personal reasons, the employee then would only be paid for hours actually worked.

(B)  Employees covered by this Agreement shall be given one hour's notice before being discharge or laid off, and in either event they shall be fully paid at once in cash, or by company payroll check, under the conditions set forth in this Article. This does not apply to any temporary suspension of work for reasons beyond the control of the Employer.  A temporary suspension of work, as herein set forth, shall mean a cessation of work which shall not exceed a total of two (2) days.  In the event employees are laid off and have not been paid, a check shall be forwarded by special delivery, postmarked the following day, to each employee. When an Employer fails to deliver a check by Special Delivery postmarked the following day, the Employer shall thereafter, during the term of this Agreement, make cash payments of all wages due on the job site at the time of the layoff.

(C)  Wages shall be paid weekly on the job before 3:30 p.m., said wages to be paid at the Employer's option, either in cash, in envelopes, upon the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security

13

number, the hours worked and the amount of money enclosed, or by check provided:

1. The check is a payroll or similar type of check, containing above information as on the pay envelope, and that delivery of the checks to the employees shall be made at least on the day preceding a banking day. Any deductions now or hereafter required by law shall also be itemized on the checks when issued.

2. The Employer has agreed to comply with the provisions of Article XII relating to bonding. Any deductions from wages now or hereafter required by law shall also be marked on face of pay envelope. If employees are not paid as specified above, double time shall be paid for the pay day between the hours of 3:30 p.m. and 5:30 p.m. and single time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided, however, that the employees report to and remain on the job during the said fourteen (14) hours.

(D) If any check provided by an Employer to an employee covered hereunder is returned by the Employer's bank, the Employer shall, within twenty-four (24) hours of notice of the bank's refusal to make payment, deliver to the employee, at the employee's home, the full amount due the employee in cash as well as fifty ($50.00) dollars in cash as liquidated damages to reimburse the employee for injuries incurred due to the failure of the Employer's

14

bank to honor the check.

## ARTICLE VII

## TRAVELING TIME AND EXPENSE

(A)  Employees covered by this Agreement who are sent to work outside of the jurisdiction of Local 2287, and who remain away overnight shall be allowed a minimum of seventy-five ($75.00) dollars per day ($45.00 for lodging; $30.00 for meals), unless equivalent provisions are made by the Employer and they shall also receive actual transportation expenses while traveling between the employee's home and the job site, including the actual cost for meals, mileage and sleeping accommodations.  Mileage shall be paid at the maximum Federal Mileage Allowance existing at the time the trip is undertaken.  The parties acknowledge that "Travel Expense" outlined in this Agreement are reimbursable employee expenses and, therefore, no deductions of any kind may be made from these monies.

(B)  Employees covered by this Agreement who are sent to work outside of the jurisdiction covered by this Agreement and who are required to return to their homes at the end of each day's work, shall receive payment at single time for all time which they travel, provided the Union has been notified.

(C)  All traveling time for work outside of the geographical jurisdiction of this Agreement between 8:00 a.m. and 3:30 p.m.,

including Saturdays, Sundays and Contractual Holidays, shall be paid for at the rate of single time.

(D)  When employees are ordered to the shop in the morning, to receive instructions or to pick up material, the employee's paid time shall begin at 8:00 a.m.  However, when employees are required to report to work at the job location or site, then travel time at single time shall only be paid for that time necessary to travel in excess of a 50 mile radius from the shop.

(E)  Where an employee is requested by the Employer to use his/her own car on two (2) or more jobs in one (1) day, for work in the five boroughs of New York City, the employee will receive for an allowance for use of the car $9.60 per day for that service, unless the accumulated railroad fare for the day is in excess of nine and 60/100 ($9.60) dollars, in which case the Employer shall pay the greater amount plus any parking fees, tolls (substantiated by receipts), and required when transporting such materials.

This payment is in addition to payment for carrying materials in the employee's car, already covered by this Agreement.

## ARTICLE VIII

## CLASSIFICATION OF INDUSTRY

Individuals, firms and corporations signing this Agreement as Employers shall be defined in three classifications as follows:

1.    Contractors
2.    Trade Shops
3.    Dealers

For the purpose of this Agreement, these are defined as follows:

1.    Contractors:  Those concerns who are, or may be, employ labor for installation of same direct from the Union or who contract and/or who subcontract for the direct installation of flooring materials and/or other material covered by **Article I** of this Agreement.

2.    Trade Shops or Workrooms:  Those concerned who contract to perform only the labor of installation of same for Dealers and Contractors only, shall employ in this installation only members of the Union.

Once an award is given to a TRADE SHOP or WORKROOM from a Contractor or a Dealer, then this same TRADE SHOP or WORKROOM shall not re-subcontract the same award to another TRADE SHOP or WORKROOM who is a non-signatory Contractor to this Agreement.  To do so is in violation of this Agreement.

3.    Dealers:  Those concerns engaged in the selling of Floor and Wall Coverings, and who engage TRADE SHOPS or WORKROOMS for the installation of the materials they sell, agree to contract only to signatory Union Contractors.

17

## ARTICLE IX

## JOB REFERRAL

The Employer agrees to report to Local 2287 the location or jobsite of each contract job to be performed twenty-four (24) hours before job start.   Repeated non-reporting of jobs will initiate referral of the defaulting Employer through Grievance Procedures provided herein.

(A)   The designated representative of the Union, as well as all Business Representatives of Local 2287, shall have access to the job site, warehouse and any other business location of the Employer at all times.

(B)   The Employer shall have the right to hire the Foreman.

(C)   Nothing in this Section shall restrict an Employer's right to discharge an employee for just cause.   If the employee so discharged or rejected was obtained from Local Union No. 2287, the employee shall be replaced from Local Union No. 2287 to maintain the ratio established above in Article IX, Section E.

(1)   The Employer shall serve written notice to Local 2287 and a copy of such notice to the affected employee by certified mail, return receipt requested, to Local 2287, and to the employee postmarked within forty-eight (48) hours of the action taken.

(2)   Any employee who has been terminated, regardless of

18

the reason for termination, must be paid all monies due through the day of the termination, including reimbursement for any outstanding claims for expenses.  Failure of the Employer to comply with any provision of this Section shall negate the termination or rejection and entitle the employee to be paid as if he was working for that time period  until the breach of this Section is satisfied.

(3)   In any case of rejection or discharge, the Employer shall notify Local 2287, as provided herein, of the time and date of discharge or rejection and shall specify, in writing, the reason(s) therefor.

(4)   The Employer shall retain the right to reject any job applicant referred by Local 2287 provided that the Employer can prove reasonable basis for said rejection.

(5)   It shall be presumed hereunder that the first person referred to a job site by Local 2287 shall be the Steward.  All jobs regardless of what type of agreement they work under shall have a New York District Council of Carpenters certified Shop Steward.  The Shop Steward responsibilities are:

a)   Enforce Collective Bargaining Agreement regarding wage & fringe benefit rates.

b)   Protect the jurisdiction of the Carpenter.

c)   Check the quarterly work cards of the Carpenters, insuring that they are up to date.

d)    Be aware that all safety standards of the jobsite are up to par.

e)    Enforce 50-50 manning provisions as addressed in the Collective Bargaining Agreement.

f)    Blow the whistle at the point of work promptly at 8:00 a.m. and at 12:30 p.m., and that it also be mandatory for him to blow the whistle for the end of work, promptly at 12:00 noon and at 3:30 p.m.

g)    Attempt to settle all disputes on the jobsite. Any dispute that is unresolved will be settled by the Business Agent of that jurisdiction.

All New York City District Council certified Shop Stewards shall be allowed to use facilities to fax Shop Steward reports to the Union every week and mail the hard copies to Local 2287. When the Shop Steward has completed his work on behalf of the District Council, he shall perform any work within his trade assigned to him by the Employer. When a signatory Employer wishes to layoff a Shop Steward during a continuous employment, the Employer must notify the Union and have a meeting on the job with the Union within twenty-four (24) hours. If termination takes place, a letter must be sent to the Union.

(6)    No Steward may be required to serve as a Leadman or Foreman on the job.

(D)  The Union shall establish and maintain an open employment list for the referral for employment of competent and qualified workers.

(1)  Applicants for referral through the Union may register provided they have the necessary skill and experience to perform the job.  Such skill and experience is presumed in case of:

(a)  Journeyman Applicants who have been employed for substantial periods of time in the job applied for within two years prior to the date they seek referral in the geographical area covered by this Agreement;

(b)  Apprentices who are currently required to attend the Apprenticeship School; and

(c)  Apprentices who have successfully completed the full apprenticeship program.

(2)  Other applicants who seek to register for referral must pass a competency test given by a Joint Union-Employer Testing Board to be established under this Agreement.  Any applicant who fails to pass the test shall have the right to appeal to an Appeal Board composed of two members appointed by the Association and two members appointed by the Union.  Such an appeal must be in writing and addressed to the Union within ten (10) days after the sending of notice of failure.  In the event of a deadlock in the Appeal Board, the matter shall be referred to the Arbitrator designated

hereunder.

(E)   In selecting applicants from the referral list, the Union shall use the following criteria:

(a)  Floor Coverers will be hired by the job referral list at the District Council.   The 50/50 rule will be enforced and no special requests can be made to the Union.   The Contractor can hire whom he wants on his 50% ratio.

(F)   The Employer and the Union shall post in places where notices to employees and applicants for employment are customarily posted, all provisions relating to the functioning of the hiring arrangements.

(G)   Unless this Agreement specifically requires the use of a Foreman on a particular job, the Employer may not use an apprentice on the job without first notifying Local Union 2287.   When a Foreman is required to be on a job, or the Employer chooses to use a Foreman, the Employer shall maintain a ratio of one apprentice for each four (4) Journeymen employed.   A Journeyman may not be substituted for an apprentice in this ratio nor may an apprentice be substituted for a Journeyman without specific permission from Local 2287 permitting such substitution.   Once an apprentice is hired in conjunction with a Foreman on a job, he/she shall be retained on the job until its completion unless he/she is discharged for just cause or Local 2287 grants permission, based on

22

the exigencies of job, to layoff the apprentice.

(H)    The Employer shall provide on a monthly basis, in writing, a list of persons employed to perform work within the jurisdiction described in the Agreement, as well as their hours and days worked to Local 2287.

(I)    Upon request of a representative of the Union and/or Local 2287, the Employer shall supply a list of jobs and the names and addresses of the persons who worked on each job for the month immediately preceding the request.

## ARTICLE X

### GENERAL FOREMAN, FOREMAN, LEAD PERSON

(A)    Where a job consists of 1,500 yards of reasonably continuous installation, 15,000 square feet of tile installation or 15,000 linear feet of base installation, a Foreman must be employed.

(B)    On each job where there is no working Foreman, the Employer shall appoint an individual to act as lead person. The Employer shall have the responsibility of advising the Steward as to who the lead person is. The lead person shall receive a Journeyman's wages. It will be the function of the lead person, and where there is no working Foreman, to pass directions on to the individuals working pursuant to the terms of this Agreement.

23

(C)  The persons appointed as Steward, if qualified, will have the highest seniority on any particular job.  The Steward shall be appointed by the Union and there shall be a Steward for each shift. The Foreman will be the last person laid off from the job-site.

(D)  On each job where the Employer employs in excess of twenty (20) people who are covered by this Agreement, it shall retain an individual known as General Foreman, to direct the working force.

## ARTICLE XI

## FRINGE BENEFIT FUNDS

(A)  Every Employer covered by this Agreement shall contribute Employer contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds. Each Employer's books and payroll records, including cash disbursement records, shall be made available upon demand of the Trustees at all reasonable business hours.

The Employer realizes that the failure of any Employer to make

24

the required fringe benefit fund contributions affects the liability of all Employers to this agreement and decreases the benefits available to the covered employees of the Employer. Therefore, the Employer to this Agreement shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representatives, all pertinent books and records, including all cash disbursement records, required for an audit to enable said auditor to ascertain and independently verify that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees in connection with the proper administration of their fiduciary responsibilities. In order to accomplish this end, it is specifically agreed that should any affiliate or subsidiary Employer as described in this Agreement be involved with the business activities of this Employer that this Employer will make available all the pertinent books and payroll records of such affiliate or subsidiary to the auditor so that a complete audit can be made. The extent of the audit and the determination as to what pertinent records are necessary to complete the audit is in the sole discretion of the Employer/Union Trustees so that they may independently verify that all required contributions have been made and discover the identity of all beneficiaries under the plans that they have been entrusted with for proper administration.

When auditors are sent to audit the books of any Employer, General Contractor, Prime Contractor, Builder or Subcontractor and a definite appointment is scheduled, when the auditor or auditors cannot start at the appointed time and date, and must return, or when valid payroll records are not furnished, then the said Employer, General Contractor, Prime Contractor, Builder or Subcontractor shall be penalized and pay the sum of $100.00 per auditor, to cover the expense of the auditor or auditors. It shall be a violation of this Agreement for any Employer, bound by this Agreement, to fail to furnish proper records when requested, for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer upon twenty-four (24) hours' notice. If such men who are removed remain on the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(B)  Contributions to the New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds shall be in accord with this Agreement. The contribution to the Supplemental Funds shall be allocated in the following manner:

Carpenters Relief and Charity Fund
TWO AND ONE - HALF CENTS ($0.025) PER HOUR

District Council Scholarship Fund
ONE-AND-ONE-HALF CENTS ($0.015) PER HOUR

The purpose of the Carpenters Relief and Charity Funds is to enable the parties to make charitable donations in the name of the carpentry industry from time to time. Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public. The contributions shall be included in the payment of the Fringe Benefit Stamp. The Fund shall be administered by two persons, one designated by the Union and the other by the Employer Associations. They shall serve without pay and shall be bonded to the extent required by law. All monies received by the Fund shall be deposited in a bank selected by the two administrators and shall be disbursed only by check signed by both administrators. At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above. The administrators shall keep such books or records as may be necessary. Once a year the administrators shall account for all monies received and disbursed.

The Supplemental Funds shall be established in accordance with

27

applicable law, and any employee's authorization that is required shall be secured by the Union.

It is agreed that all contributions are due and payable to the District Council Fund Office as called for in this Agreement for the other fringe benefit funds and the Employer does hereby authorize said area Fund Office to forward said contributions to the Fund Office in such manner as the Trustees of said fund shall reasonably require.

The parties also recognize their right to be represented on the New York State Carpenters Labor-Management Committee and by the execution of this Agreement the parties authorize the representatives of the participating Employers and Carpenter Unions to designate their respective Union and Employer Trustees hereby waiving all notice thereof and ratifying all actions taken by them within the scope of their authority.

Effective July 1, 1996 the parties to this Agreement recognize the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund. The Committee will be funded by contributions paid through the Trust Funds Stamp Plan. Said donations shall be made in accordance with all applicable Federal and State Laws pertaining thereto.

The Contractor and the Union acknowledge that they are represented by their duly designated Trustees to administer the

various Fringe Benefit Trust Funds provided for in this contract. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all Employers and Union representatives and their respectively designated Trustees, each Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each Contractor signed to this Agreement and their employee-beneficiaries under the respective fund plans.

(C)    When any Employer sends its employees to work in any locality outside the geographical jurisdiction as listed in **Article II** of this Agreement, it shall forward all fringe benefits for the members of Local Union 2287 to the New York City District Council of Carpenters Fringe Benefit Funds' office, and credit same to the Employer's account where required; provided, however, should the Employer be required by the Collective Bargaining Agreement with the District Council and/or Local Union outside the jurisdiction of the New York District Council to make contributions and upon proof of such payment, deduct the same from the total contributions for the reporting period due to the New York District Council.

(D)    Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United

Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds. The Trustees of the Funds shall secure the approval of the Treasury Department under the applicable provisions of the Internal Revenue Code and shall amend the same, if necessary, to secure such approval, so as to qualify the Employer-contributions as deductions for Federal Income Tax purposes.

(E)  It is agreed that no contributions to any of the Funds as specified in this Article shall be required on the premium portion of wages. For the purposes of these Sections only, all hours worked shall be regarded as straight-time hours.

(F)  Whenever the Employer is in default in payments to the Fringe Benefit Funds referred to in this Article of the Agreement, and reasonable notice of not less than seventy-two (72) hours of such default is given to the Employer, if the payments are not made, the Union may remove its members from the work of such Employer. If such members who are removed remain at the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(G)  In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a

30

Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgement of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

(1) the unpaid contributions; plus

(2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

(3) an amount equal to the greater of --

   (a) the amount of the interest charges on the unpaid contributions as determined in (b) above, or

   (b) liquidated damages of 20% of the amount of the unpaid contributions; plus

(4) reasonable attorney's fees and costs of the action; and

(5) such other legal or equitable relief as the court deems appropriate.

In the event that proceedings are instituted before an arbitrator under Section H of this Article to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs

31

as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s).

(H)   Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Employer or the Union, as the case may be.   Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened as soon as practicable and the arbitrator shall submit his award within twenty (20) days after the close of the hearing.   The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages.   The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction.   The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

Roger Maher, Joseph W. Lipowski, Robert Silagi or Robert

Herzog is hereby designated as impartial arbitrator(s) hereunder.

The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the Employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law. The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

(I) A stamp plan has been established which provides for the payment of contributions to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund and Supplemental Funds pursuant to a consolidated stamp, including the filing of the monthly summary report with the Fund office. The Employer will comply with procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated stamp together with his/her pay. The stamps shall be purchased through facilities established by the Bank of New York or such other agencies authorized by the Trustees.

## ARTICLE XII

## BONDING

### Section 1

An Employer is required to post a bond as set forth in **Article XII,** **Section 5** of this agreement to guarantee payment of contributions to the Funds as provided for in **Article XI.**

### Section 2 - Employer's Acknowledgment of Prompt Payments to the Funds

The Employer further acknowledges and the parties agree that prompt payment of fringe benefit contributions is essential to the proper administration of the Agreement, the appropriate funding and actuarial soundness of the Funds and the timely payment of benefits to participating employees. The Employer agrees to comply with the Funds' Collection Procedures, as may be adopted by the Board of Trustees, including responding to information and other requests on a timely basis, promptly including but not limited to permitting and cooperating with an audit. When a signatory Employer owes to the Benefit Funds an amount greater than the face amount of its bond, the bond must be increased to cover such indebtedness. An Employer determined to be delinquent shall be required to make weekly cash payments to the Funds by certified check to cover on-going contribution obligations. If this is not done, the Union at its discretion may remove all of its members from the employ of

that Employer.

## Section 3 - Job Action for Non-Complying Employer

The Employer agrees to provide a bond in such amounts as provided for here in **Article XII** relating to Bonding before commencing any work. In the event that the Employer fails to provide such bond within seven (7) days of commencing work, the District Council may consider the Employer in default and remove its members, upon reasonable notice, from each of the Employer's job sites. If the members remain on the site, they shall each receive no more than three (3) days of wages and fringe benefit contributions during such job action.

## Section 4 - Personal Liability of Shareholders, Officers, Other Individuals

(A) In the event that the Employer fails for any reason to satisfy the Bonding requirement provided for here in **Article XII**, the Employer agrees that its shareholders, officers, and individuals who are empowered to execute agreements, sign checks and pay fringe benefit contributions shall be personally liable, jointly and severally, for all unpaid amounts due and owing to the Funds, including but not limited to interest, liquidated damages, auditors' costs, attorneys' fees and costs to collect the same.

(B) No Limitations

This Section shall in no way relieve or excuse any Employer of

35

the obligation to provide the required Bond regardless of the business form under which the Employer does business, nor shall this provision limit the personal liability of any corporate officers or shareholders based on operation of law.

(C)  <u>Application to Non-Complying Employer</u>

Any Employer commencing work in violation of this **Section** shall be in violation of **Article XI** relating to the Funds.

<u>**Section 5 - Bond Amount**</u>

The Funds' Trustees shall determine the amount of Bond the Employer is required to provide, but such amount shall be no less than an amount equal to sixty days of estimated contributions.

The Employer shall provide a Bond in the minimum amounts as follows:

| <u>Number of Employees</u> | <u>Bond Amount</u> |
|---|---|
| 1-3 | $ 10,000.00 |
| 4-7 | $ 15,000.00 |
| 8-15 | $ 20,000.00 |
| 16-20 | $ 30,000.00 |
| 21-25 | $ 75,000.00 |
| 26 or more | $125,000.00 |

The Funds may seize the bond if the Funds determine that the Employer has failed to make required contributions to the Funds or if the Employer has violated the Funds' Collection Procedures. The amount of the bond shall be subject to increase or decrease, in the discretion of the Trustees, depending on the number of employees employed on a particular job site or period.

36

## ARTICLE XIII

### MISCELLANEOUS CONDITIONS

(A)  Only persons covered by this Agreement may perform work covered within the jurisdiction of this Agreement.

(B)  If employees who are subject to this Agreement are withdrawn upon the orders of their International Officers or of the Union, or of Local 2287, it shall not be considered a violation of this Agreement.

(C)  Reimbursement for the loss of tools or clothing shall be paid not to exceed:

| | |
|---|---|
| Tools.................. | $600.00 (finish) |
| | $500.00 (concrete) |
| Overcoat............... | $150.00 |
| Other Clothing........ | $150.00 |
| Shoes................. | $125.00 |

All Floor Coverers will be required to carry a full set of tools at all times.  The Employer shall furnish a suitable tool and clothing locker.  The locker shall have the door hinged in such a way that the hinges cannot be taken off while the door is closed without breaking the door.

(D)  The Employer agrees that it will be responsible and liable for payments of all wages and fringe benefits for any Subcontractor who is engaged by the Employer to perform work that falls within the jurisdiction, as set forth herein, of the District Council.

(E)  It shall be mandatory upon the General or Prime Contractor or Builder to notify the District Council within thirty (30) days of an award and prior to the start of work, that a subcontract necessitating employment of members of the District Council has been awarded.  Included in this notification shall be the name and address of such Subcontractor and location of job site.

(F)  Each party hereto agrees that neither the Union nor any Employer will discriminate, in any manner, against any individual by reason of race, color, creed, national origin, citizenship, age, sex, or affectional preference, Union membership or non-membership, or Union activity as defined in applicable federal, state or local laws. For the purposes of this Article, "citizenship status" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

(G)  Any employee required to work during the lunch period shall be paid one-half (½) hour at the overtime rate and shall be allowed one-half (½) hour to eat lunch.  All employees at the job-site are required to take their one-half (½) hour lunch. Permission to work through lunch must be given by the Employer.

(H)  When an Employer enters into a Joint Venture with an Employer who is not bound by this Agreement, then said Joint-

38

Venturers shall sign an Agreement as Joint Venturers with the Union. Each joint venture shall comply with the Bonding provisions in **Article XII**.

(I)  Each Joint-Venturer shall furnish a new Surety Bond covering said Joint Venture or furnish the Union with a Rider from their respective insurance carriers, confirming that their respective Surety Bond protects the Fringe Benefit Funds during the period of said Joint Venture.

(J)  Where, for the benefit of an Employer, an employee must cross a body of water to reach the jobsite and there is no public transportation available to said site, then it shall be the duty of the Employer to provide adequate safety and comfort for the employee's transportation.  The Employer shall protect such employee under a policy of public liability insurance or any other insurance required by law for any public conveyance.  Such certificate shall be posted in a conspicuous place, on any conveyance used by the Employer.  Should such transportation, whether public or private, require extraordinary fare, such fare shall be paid by the Employer.  The employee shall not leave the shore opposite the jobsite earlier than 8:00 a.m. and shall return to the same shore not later than 3:30 p.m.

(K)  There shall be no loss in wage time to an employee on the day of injury when medical attention is required to said employee

39

while working on the Employer' job, provided that the employee submits a note from the Doctor or Clinic, stating that the employee cannot work that day.

(L)  The Employer agrees that it will not subcontract any work covered by this Agreement which will in any way, either directly or indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(M)  All work covered by this Agreement shall be contracted or subcontracted only to an Employer who is signatory to a Collective Bargaining Agreement with the Union.  The parties hereto mutually agree with respect to such work falling within the scope of this Agreement that is to be done at the site of construction, alteration, maintenance, or repair of any building, structure, or other works, that if the Employer should contract or subcontract any of the aforesaid works falling within the trade jurisdiction of the Union as set forth herein, said Employer agrees that it will not sub-contract any work covered by this Agreement which will in any way, either directly or indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(N)  The Contractor further agrees that, upon receiving written notice from the Union that its Subcontractor is delinquent in payment of wages, or the payment of any of the fringe benefits

40

called for herein, such Contractor will withhold from any Funds in its possession which are or which may be due to said Subcontractor until it receives further notice from the Union that the Subcontractor delinquencies have been paid.

(O)  In order to protect and preserve for the employees covered by this agreement all work historically and traditionally performed by them, and in order to prevent any device or subterfuge to avoid the protection or preservation of such work, it is hereby agreed that if and when the Employer shall perform any work on a job site of the type covered by this agreement as a single or joint Employer (which shall be interpreted pursuant to applicable NLRB and judicial principles) within the trade and territorial jurisdiction of the Union, under its own name or under the name of another, as a corporation, sole proprietorship, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners, or stockholders) exercises either directly or indirectly (such as through family members) controlling or majority ownership management or control over such other entity, the wage and fringe benefit terms and conditions of this agreement shall be applicable to all such work performed on or after the effective date of this Agreement.  The foregoing shall not be interpreted to apply to separate Employer situations.  It is not intended that this Article

41

be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

(P)  The following listed tools, which are considered as Shop Equipment, shall be furnished by the Employer when decided by the Employer that they are necessary for a specific job:

1.  Power Stretcher
2.  Tile Cutter
3.  Blow Torch Tank or Tanks
4.  Electric Drill
5.  Roller - except Hand or Wall
6.  Cleaning Equipment
7.  Electric Stapler
8.  Spray Machine or Mask

(Q)  The Employer agrees to abide by all OSHA Regulations when supplying employees with safety equipment and ventilating work areas.

(R)  If an employee is required to use Powder Actuated tools he is to be qualified to use said Powder Actuated Tools by securing from the Tool Manufacturer an Operator's Card or similar proof of qualification, and the Union shall cooperate with the Employer and Tool Manufacturer in having the employee expeditiously qualified. No Powder Actuated Tools shall be used that have not been previously approved by the State Board of Standards and Appeals.

(S)  There will be no quotas imposed on Floor Coverers working on a jobsite.

(T)  Any Employer found guilty of offering cash to Floor

Coverers for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds.

(U) All Floor Coverers will be allowed a ten minute coffee break in the morning. This will also be allowed in the afternoon when working 40 hours.

(V) Every signatory Employer party to this contract shall notify the District Council on its specified form, by fax, certified mail, or telephone, of the awarding of any contract on which any of the work described in Article I hereof shall be performed by said Employer or a Subcontractor. Said notice shall include the location of the job, the name and address of the Contractor or Subcontractor involved, and the identity of the General Contractor. The District Council shall then provide the Employer with a specified job identification number for that specific job. This identification number will be utilized for the District Council job referral list, Steward's reports, and summary/remittance reports. In addition, the Foreman, General Foreman and/or the first employee is required to report his/her presence on said jobsite and obtain this identification number.

Failure to comply with this Section, shall be a breach of this Agreement and shall authorize the Union to remove its members from any job on which said Contractor or Subcontractor has not complied

with this notice.  The aforesaid notice shall be given within thirty (30) days of the award of a contract, and in any event, prior to the commencement of work, or after the cessation of work, prior to the recommencement thereof.  It is understood that the provisions of this Section will be strictly enforced by the Employer, as set forth above, a pre-job conference will be held, if one is requested by the Union.  The Employer shall fax a notice of job closure to the District Council to signify the completion of the job.

## ARTICLE XIV

### GRIEVANCE PROCEDURE

**Section 1.**    All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

**Section 2.** Any grievance not resolved shall be submitted to arbitration before Roger Maher, Robert Silagi, Joseph W. Lipowski or Robert Herzog who shall serve as permanent arbitrator(s)

hereunder. The arbitrator shall have the right to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing. The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgement in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered.   The costs of the arbitration, including the arbitrator's fee shall be borne equally by the Employer and the Union.

**Section 3.** It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted.  Service of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the Employer when it signed the agreement. If certified or registered mail is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is forwarded to the address of record contained in this agreement.

45

**Section 4.** Upon the confirmation of the arbitrator's award, the prevailing party shall, or on any appeal therefrom, be entitled to receive all court costs in each proceeding as well as reasonable counsel fees.

## ARTICLE XV

### GREATER NEW YORK FLOOR COVERERS INDUSTRY &

### A.J.R.R.I. PROMOTIONAL FUND

The Employer covered shall contribute to the Greater New York Floor Coverers Industry Promotional Fund an amount equivalent to one-half (½) of one (1%) percent of the employee's hourly wages and fringe benefits for every hour worked by the employees of said Employers, whenever engaged in Floor Covering whatsoever.

The Benefit Fund Office of the District Council shall advise the Union and the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND whenever an Employer shall be in default in the payment of contributions due the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND.

Each Employer shall be bound by all the terms and conditions of the Agreement and Declaration of Trust by and between each signatory of this Agreement, creating the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND and all By-Laws adopted to regulate said Fund.

All Employer-contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall be remitted monthly with the stamp plan contributions for the Benefit Fund. The bank servicing the Benefit Funds shall deliver all such contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, after verifying that the amount of each such contribution has been correctly computed by the Employer.

The GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall reimburse the Carpenters Fringe Benefit Funds for all expenses incurred by it.

The Fund and all payments thereunder may not be used for lobbying in support of anti-labor legislation and for any purpose contrary to the interest of the District Council nor for subsidizing of any Contractor during periods of work stoppages or strike.

There shall be established by this Agreement, a Joint Review Committee, consisting of two (2) members appointed by the District Council, and two (2) members appointed by the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, whose duties, among other things, shall be to periodically review any increase or decrease in the amount of the Surety Bonds as the case may be, or in the event of a default in the terms and conditions of the Collective Bargaining Agreement by a Contractor, signatory to this

47

Agreement, when engaged in Floor Covering as defined in **Article I**, where a new, different, or additional Bond is required or necessary, and to perform such other duties and services as may serve to upgrade and maintain the standards of proficiency of Floor Covering, and to create greater work opportunities for members of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

In the event an Employer does not wish to be bound to contribute to the Greater New York Floor Coverers Industry Promotional Fund, as set forth in this **Article** hereof, then said Employer hereby agrees to be bound to contribute an amount equivalent to one-half (½%) of one (1%) percent of the employee's hourly wages and fringe benefits for every hour worked by the employees of said Employer, whenever engaged in Floor Covering whatsoever, to the Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund. This contribution is in addition to the contribution provided for in **Article VI** of this Agreement.

## ARTICLE XVI

### SAVINGS CLAUSE

If the Courts should decide that any clause or part of this Agreement is unconstitutional or illegal, or should any clause or

part of this Agreement be found contrary to present or future laws, it shall not invalidate the other portions of this Agreement, it being the sole intent and purpose of this Agreement to promote peace and harmony in the Industry as permitted by Law.

### ARTICLE XVII

### EXPIRATION AND AUTOMATIC RENEWAL

This Agreement shall be binding on the Employer and the Union, their successors and assigns. The duration of this Agreement shall continue until July 1, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement.

## ARTICLE XVIII

### EFFECTUATING CLAUSE

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set our hands and seal this 14 day of April , 2006 .

For The Employer: **Dartz And Matz Inc.**

By: _____          H. Jared Mathsock
    (Officer's Signature & Title)              (Print Name)

For the Union:

DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED BROTHER-
HOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO.

By: _____

The party of the First Part, herein referred to as the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.

**Dartz And Matz Inc.**

By: _____          4/14/06
    (Officer's Signature & Title)              (Date)

Acknowledgment of Promotional Fund Contribution:

Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund

By: _____

**or**

Greater New York Floor Coverers Industry Promotional Fund

By: _____

50

## INTERIM COMPLIANCE AGREEMENT
## INDEPENDENT CONSTRUCTION AGREEMENTS
### EFFECTIVE JULY 01, 2006

**CONTRACTOR:**      **DARTZ AND MATZ INCORPORATED**

**ACCT #**      **17898**

This Interim Compliance Agreement will confirm that we have agreed to extend our current Collective Bargaining Agreement (the "Agreement") with the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, (the "Union") which may expire on June 30, 2006 on the following terms:

### Article I
### Extension of Term

Not withstanding any express termination date contained in the Agreement, the Agreement shall remain in full force and effective until Union negotiates the successor Agreement with the Association (The "Association(s)") whose members perform work similar to the work performed by the Contractor. The "Associations" include the Building Contractors Association ("BCA"), Association of Wall-Ceiling & Carpentry Industries of New York ("Wall-Ceiling"), Contractors Association of Greater New York ("CAGNY"), Greater Metro New York Resilient Floor Coverers Association ("Floor Coverers") Hoisting Trade Association of New York ("Hoisting Trades") the Cement League and Concrete Contractors of Long Island, General Contractors Association, The New York City Millwright Contractors Association, Association of Dockbuilders, Marine Divers and Pile Drivers, New York Trade Show Contractors Association.

### Article II
### Retroactive Application of New Agreement

When the Union concludes negotiations with the Association(s), whose members perform work similar to the work performed by this firm, all terms and conditions of the newly negotiated Agreement (the "New Agreement(s)"), including but not limited to, wages, fringe benefits, the arbitration provisions, effective dates and all other terms and conditions of employment, as agreed between the Union and the Association(s), shall be binding on our firm, retroactive to July 01, 2006.

### Article III
### No Refund of Contribution or Wages

Notwithstanding anything contained herein to the contrary, the Trustees of the various fringe benefit funds of the Union shall not be required to refund any contributions due to a negotiated decrease, if any, in benefit rates contained in the New Agreement(s). Nor shall any employee be required to refund any wages due to a negotiated decrease, if any, in wage rates contained in the New Agreement(s).

1

## Article IV
## No-Strike Provision

If the Union reaches an impasse with any of the Associations, whose members perform work similar to the work performed by this firm, and engage in an economic strike against its members, the Union will not engage in an economic strike against the firm. Notwithstanding anything contained herein to the contrary, the Union reserves the right to lawfully strike, at the Union's option, against our firm, our successor, our assignee, our parent and our subsidiary, which perform such work or other work as a subcontractor for the Association(s), or its affiliates, against whom the Union is engaged in a strike.

## Article V
## Execution and Compliance with New Agreement

Our firm, its successors and/or assignees, shall execute successor agreement(s) within five (5) days of the receipt of the Union's request. However, our firm shall be bound to the terms contained in the New Agreement(s) retroactive to July 01, 2006, by virtue of executing this agreement, regardless of whether it actually executes a successor agreement.

## Article VI
## Direct Negotiations

If the Union is unable to reach an agreement with the Association(s) for terms and conditions of employment for a successor agreement, upon ten (10) days oral or written notice to our firm, the Union, at its sole option, may cancel the No-Strike Provision of this agreement and demand that direct negotiations be opened with our firm to negotiate a successor Collective Bargaining Agreement.

In Witness Whereof, the parties hereto make and enter into this Interim Compliance Agreement, and we, their duly authorized and empowered representatives, have hereunto set our hands and seal this:

**Contractor:**
DARTZ AND MATZ INCORPORATED
99 GRAND STREET  SUITE 18
MOONACHIE, NJ 07074

OFFICER'S SIGNATURE        Pres.            H. Jared Mathusek
                           **TITLE**        **PRINT NAME**

**Date Signed:**

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA

**By:** _____

2